IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MATTHEW ALEXANDER KING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| KATHY HILL, | ) |
| N. SIMPKINS, | ) |
| S. WALLACE, | ) |
| M. SCHREIBER, | ) |
| M. WALLACE, | ) |
| DAN SPROUL, | )  Case No. 21-cv-1699-DWD |
| J. LECLAIR, | ) |
| C. DAVIS, | ) |
| AMBER NELSON, | ) |
| BARBARA VON BLANCKENSEE, | ) |
| FEDERAL BOP, | ) |
| MARY NOLAND, | ) |
| KATHERINE SIEREVELD, | ) |
| TRACY KNUTSON. | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Matthew Alexander King, an inmate of the Federal Bureau of Prisons (BOP) detained at the United States Penitentiary at Marion (Marion), brings this civil rights action pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) (allowing suits against federal employees for violations of constitutional rights), and various provisions of Illinois state law. King originally filed his case in state court, but the Defendants removed the case based on the Westfall Act, 28 U.S.C. § 2679(b)(1), and 28 U.S.C. § 1442(a)(1). The allegations in this lawsuit concern Defendants' alleged

interference with inmates' access to the prison grievance procedure including BP-8, BP-9, BP-10, and BP-11 forms. Plaintiff seeks monetary and injunctive relief.

Plaintiff's Complaint (Doc. 1-1) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. *See Gibson v. Carrington*, 2021 WL 1667036 at *1 (S.D. Ind. 2021) (conducting 1915A review for a removed case). Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

Plaintiff alleges that he is an inmate in the Communications Management Unit (CMU) at Marion. He alleges that up until a few months ago, he and other inmates were able to use the Administrative Remedy Program (ARP) with no problems. Plaintiff claims that recently Defendants Sproul, Wallace, Schreiber, Knutson, Siereveld, Hill, and Rushing devised a plan to prevent plaintiff and other CMU inmates from using the Administrative Remedy Program because they believed CMU inmates were filing too many BP-9s. As part of the plan, the defendants decided that Defendant Rushing gave out BP-9 forms too freely, so they replaced Rushing with Defendant Simpkins. In April of 2021, Simpkins told CMU inmates that he would not hand out BP-9s because everyone

must first try to resolve their grievances informally, as required by the ARPs Informal Resolution Process.

In addition to the reduced availability of grievance forms, Defendants Schreiber, Wallace, and the Clerk and Coordinator, were allegedly told to find 'procedural' reasons to reject BP-9s.  Plaintiff claims this led to many correct and timely BP-9s being rejected by Wallace and Schreiber.  Plaintiff also alleges that entry of BP-9s intro the SENTRY system was delayed; receipts for BP-9s were denied; responses were delayed (which frustrated further processing); and, responses to BP-9s were not delivered in a timely fashion.  Plaintiff alleges that BP-10s and BP-11s were also improperly handled. Additionally, Plaintiff claims that the 'mailbox rule' was not applied, which interfered with the timeline for filing appeals of grievances to regional and central offices.

Plaintiff alleges that these policies and customs have been implemented and enacted by Defendants Sproul, Schreiber, Wallace, Blanckensee, Noland, Nelson, Winter, Pattios, Knutson, Siereveld, Caravajal, and Hyle for decades.[1]  Plaintiff also claims that the Warden has adopted a policy of denying all inmate grievances which "effectively makes the remedy process at the institutional level a 'dead-end' for inmates."  The dead-end problem has been carried out at all levels.  As a result of the complained of actions, plaintiff alleges he is suffering from extreme emotional distress, extreme anguish and grief, and a loss of sleep.

---

[1] Pattios, Caravajal and Hyle were not formally named as defendants.

Plaintiff breaks his factual allegations into five legal claims: a First Amendment claim for damages for violating the Plaintiff's rights to petition the government for redress under *Bivens*; a First Amendment claim for injunctive relief under *Bivens* concerning access to the grievance procedure; a civil conspiracy claim under Illinois law; a negligence claim under Illinois law and an intentional infliction of emotional distress claim under Illinois law.  Plaintiff seeks declaratory, injunctive, and monetary relief.

The court designates the following Claims, based on the Complaint:

**Claim 1:** **First Amendment claim against defendants in their individual capacities for alleged interference with the grievance procedure and the right to petition the government for redress;**

**Claim 2:** **First Amendment claim against defendants in their official capacity for injunctive relief, in relation to access to the grievance procedure;**

**Claim 3:** **Illinois law conspiracy claim;**

**Claim 4:** **Illinois law negligence claim;**

**Claim 5:** **Illinois law intentional infliction of emotional distress claim.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.  Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*.  See *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

### Defendants' Notice of Removal

In the Notice of Removal, Defendants' argue that the claims in Plaintiff's complaint are removable either under 28 U.S.C. § 1442(a)(1), or 28 U.S.C. § 2679. (Doc. 1 at 1). Defendants argue that during the timeframe in question, the Defendants were all employees of the BOP. (Doc. 1 at 2-4). The Defendants included a certification that the named parties were acting within the scope of their employment. (Doc. 1-2 at 2-3). Further, to the extent the Court construes the case as properly brought under the Constitution, Defendants argue that such a claim can be removed pursuant to 28 U.S.C. §§ 1331 and 1442(a)(1). (Doc. 1 at 2-6).

## Analysis

### Claims 1 and 2: First Amendment Access to Grievances

Under Article III of the United States Constitution, federal courts have jurisdiction to hear only cases or controversies. *Booker-El v. Superintendent, Indiana State Prison*, 668 F.3d 896, 899 (7th Cir. 2012). As the Supreme Court reiterated in *DaimlerChrysler Corp. v. Cuno*,

> A case in law or equity, Marshall remarked, was a term . . . of limited signification. It was a controversy between parties which had taken a shape for judicial decision. If the judicial power extended to every question under the constitution it would involve almost every subject proper for legislative discussion and decision; if to every question under the laws and treaties of the United States it would involve almost every subject on which the executive could act. The division of power [among the branches of government] could exist no longer, and the other departments would be swallowed up by the judiciary." 4 Papers of John Marshall 95 (C. Cullen Ed. 1984).

547 U.S. 332, 341 (2006). To establish a controversy, a plaintiff must demonstrate standing—that is, "a personal injury fairly traceable to the defendant's allegedly

unlawful conduct and likely to be redressed by the requested relief"—and a controversy must exist through all stages of the litigation. *Id.* at 342.

The Supreme Court of the United States has established three elements of standing: (1) "the plaintiff must have suffered an 'injury in fact'" which is concrete, particularized, and actual or imminent, not conjectural or hypothetical; (2) "there must be a causal connection between the injury and the conduct complained of[;]" and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defendants of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations and internal quotation marks omitted). An injury is "concrete" when it "actually exist[s]." *Spokeo, Inc. v. Robbins*, 578 U.S. 330 (2016).

"[A] generalized grievance against allegedly illegal governmental conduct [is not] sufficient for standing to invoke the federal judicial power." *United States v. Hays*, 515 U.S. 737, 743 (1995). An injury based on a generic assertion that the government did not follow the law is not a particularized injury because it is not distinguishable from the injury to every citizen. *Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013). To have standing, a plaintiff must show a concrete and particularized injury beyond the generalized grievance arising from a violation of the law. *Carney v. Adams*, 141 S.Ct. 493, 499 (2020).

"The injury-in-fact requirement can be satisfied by a threat of future harm or by an act which harms the plaintiff only by increasing the risk of future harm that the plaintiff would have otherwise faced, absent the defendant's actions." *Booker-El*, 668 F.3d at 899, citing *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 634 (7th Cir. 2007). Some day intentions—without any description of concrete plans, or indeed even any specification

of when some day will be—do not support a finding of the 'actual or imminent' injury that our cases require. *Lujan*, 504 U.S. at 564. "'Although standing in no way depends on the merits of the plaintiff's contention,' standing *does* turn on 'the nature and source of the claim asserted.'" *Bond v. Utreras*, 585 F.3d 1061, 1073 (7th Cir. 2009). "[T]he Supreme Court's standing doctrine requires litigants to establish an injury to an interest 'that the law protects when it is *wrongfully* invaded, and this is 'quite different from requiring them to establish a *meritorious* legal claim.'" *Id., citing Aurora Loan Servs., Inc. v Craddieth*, 442 F.3d 1018, 1024 (7th Cir. 2006).

In the present case, Plaintiff cannot establish standing for his claim because he has not identified an actual injury to an interest that is protected if wrongfully invaded. First, Plaintiff does not allege in his complaint that he was personally prevented from lodging a grievance regarding any specific issue. His allegations are all couched in general terms that he and others were denied access to grievance forms or that the process of their grievances was delayed or made impossible. These generic allegations do not show a personal injury because they are akin to a broad allegation that the government violated the law. *Hollingsworth*, 570 U.S. at 706.

Second, even if Plaintiff alleged a lack of access to the grievance process for a specific grievance he tried to file, such a claim does not constitute a violation of a protected interest. Plaintiff argues that the defendants violated his First Amendment rights by attempting to obstruct access to the BOP grievance procedure, but inmates do not have a specific right to access a grievance procedure. "Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create

interests protected by the Due Process Clause" of the Fourteenth Amendment. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) (citations omitted); *Drew v. Vanord*, 2019 WL 2422248, at * 4 (S.D. Ill. 2019) (dismissing First Amendment claim against BOP employees based on alleged interference with grievance procedure because there is no First Amendment right to a grievance procedure). The Constitution requires no procedure at all, and the failure of prison officials to follow their own procedures does not, standing alone, violate the Constitution. *Maust v. Headley*, 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100–01 (7th Cir. 1982). Thus, Plaintiff cannot demonstrate an injury to a *protected* interest. *Bond*, 585 F.3d at 1073. Plaintiff's allegations do not demonstrate standing based on a prior injury.

The Court also considered whether Plaintiff might have standing for injunctive relief based upon the possibility of a future injury. The likelihood of a future harm is important to the standing analysis. A mere possibility that harm could occur in the future, without a clear description of when or how harm will arise is not sufficient. *See e.g. Lujan*, 504 U.S. at 564-68 (finding that the possibility of future travel to view animals in an area where those animals may become extinct by implementation of an Act was not a specifically concrete injury for standing); *City of Los Angeles v. Lyon*, 461 U.S. 95, 103 (1983) (finding that plaintiff lacked standing for injunctive relief because the potential of future harm by an improper choke at a police encounter was too speculative); *Szymankiewicz v. Esthers*, 915 F.2d 1575, at *1 (table) (7th Cir. 1990) (finding that allegations that prison officials opened plaintiffs mail in the past and confiscated certain material did not warrant a future injunction because there was no clear threat of future injury).

Plaintiff's allegations about access to the grievance procedure do not warrant injunctive relief because like the plaintiff in *Lyons*, the likelihood that harm will arise is speculative.

Plaintiff's allegations certainly suggest that in the future if he tried to access the BOP grievance procedure, he may have trouble doing so, or his access might be totally prevented for a number of reasons. For example, he alleges that some BP-9 forms are not being processed in a proper or timely fashion. These allegations do not create standing because they still rely on the proposition that access to the grievance procedure is a constitutionally protected interest, but as the Court concluded above, it is not a protected interest. However, the Court acknowledges the possibility that Plaintiff's eventual alleged harm could be secondary to access to the grievance procedure.

Specifically, an inmate is generally required to fully exhaust the available institutional grievance procedure before instituting litigation concerning conditions or events during their incarceration. To show an actual injury for a claim of lack of access to the courts, a plaintiff would need to establish that an attempt to pursue nonfrivolous litigation was hindered by unjustified acts or conditions caused by defendants. *Purkey v. Mayberry*, 385 Fed. App'x 575, 578 (7th Cir. 2010). By contrast, if a prisoner alleges that an issue with the grievance procedure frustrated his ability to petition the government for redress, but he is subsequently able to file a lawsuit, his right to petition the government for redress has not been violated. *Bridges v. Gilbert*, 557 F.3d 541, 555 (7th Cir. 2009). Although the eventual consequence of the conduct that Plaintiff complains of may be difficulty exhausting a matter for future litigation purposes, the Court finds this

potential injury too speculative to provide a basis for standing in the present lawsuit. Indeed, Plaintiff could raise and argue the inaccessibility of the grievance procedure as a counterargument to the affirmative defense of failure to exhaust if the issue ever arose for him in future litigation. Given the lack of specific present harm, the speculative nature of future harm, and Plaintiff's ability to raise the issue in future litigation if it arises, the Court finds that Plaintiff currently lacks standing to seek injunctive relief concerning access to the grievance procedure.

Even if Plaintiff had standing to seek injunctive relief, and a sufficient potential injury, his request is also flawed because it seeks injunctive relief under *Bivens* against officials in their official capacity. Specifically, Plaintiff alleges that he seeks injunctive relief from the defendants in their official capacity. (Doc. 1-1 at 5). "[P]laintiff seeks injunctive relief against ALL of the defendants in their OFFICIAL CAPACITIES, under BIVENS, ORDERING defendants to STOP interfering with plaintiff's and other CMU inmates right to properly utilize the grievance system, to include an ORDER requiring defendants to, inter alia, pass out BP-8s to CMU inmates, request to answer them within 3 days, and to IMMEDIATELY log all BP-9s, upon receipt, and to IMMEDIATELY generate receipts for them within 24 hours." (Doc. 1 at 7 ¶ 25). A plaintiff cannot bring a *Bivens* claim against a defendant in his or her official capacity. *See Bunn v. Conley*, 309 F.3d 1002, 1009 (7th Cir. 2002). This is because an action for damages against an individual in his official capacity is an action against the government and is thus barred under the Eleventh Amendment. *Hadi v. Horn*, 830 F.2d 779, 783 (7th Cir. 1987). As such,

Plaintiff's claim for injunctive relief could not succeed as precisely pled, even without the standing problems discussed above.

**Claims 3-5: State law claims removed under the Westfall Act**

Finally, as to the Defendants removal of the state law claims in reliance on the Westfall Act, the Court finds that such removal is proper. *Osborn v. Haley*, 549 U.S. 225, 230-32 (2007). The Westfall Act grants federal employees' absolute immunity from tort claims arising out of acts undertaken in the course and scope of a federal employee's employment. *See id.*, 549 U.S. at 230 (citing 28 U.S.C. § 2679(b)(1)). It amended the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2671-80, to require substitution of the United States as a defendant in a tort suit brought against a government employee. *Id.* at 230. It empowers the Attorney General to certify that a federal employee sued for wrongful or negligent conduct "was acting within the scope of his office or employment at the time of the incident out of which the claim arose," and renders the Attorney General's certification "conclusiv[e]…for purposes of removal." *Id.* (citing 28 U.S.C. §§ 2679(b)(1), (d)(1), (2)). Upon such certification, the United States is substituted as defendant in place of the federal employee, and the employee is dismissed. *Id.* (citing § 2679(d)(2)). The action is then governed by the FTCA.

Here, there are three claims that rely on state law—a claim for conspiracy, a claim for negligence, and a claim for intentional infliction of emotional distress. These claims will be allowed to proceed against the United States, because the Chief of the Civil

Division of the local United States Attorney's Office[2] has certified that the defendants were acting as employees of the United States during the conduct complained of in this case. The Clerk of Court will be **DIRECTED** to **ADD** the United States as a defendant in this action. The United States will be the sole defendant for counts 3-5.

## Disposition

**IT IS HEREBY ORDERED THAT Claims 1 and 2** are **DISMISSED** because Plaintiff lacks standing to raise these claims. **Claims 3-5** shall proceed against the United States. The Clerk of Court is **DIRECTED** to **ADD** the United States as a party. The Clerk of Court is **DIRECTED** to **TERMINATE** Defendants Hill, N. Simpkins, S. Wallace, M. Schreiber, M. Wallace, Dan Sproul, J. Leclair, C. Davis, Amber Nelson, Barbara Von Blanckensee, Federal Bureau of Prisons, Mary Noland, Katherine Siereveld, and Tracy Knutson, because with the substitution of the United States and the dismissal of Claims 1 and 2 there are no remaining claims against these parties.

The Clerk of Court is **DIRECTED** to complete, on Plaintiff's behalf, a summons and form USM-285 for service of process on Defendant the United States; the Clerk shall issue the completed summons.

Pursuant to Federal Rule of Civil Procedure 4(i), the Clerk shall (1) personally deliver to or send by registered or certified mail addressed to the civil-process clerk at the office of the United States Attorney for the Southern District of Illinois a copy of the

---

[2] A United States Attorney may issue the certification in lieu of the Attorney General. *See* 28 C.F.R. § 15.4(a). In the instant case, the United States Attorney delegated this authority to the Chief of the Civil Division, who certified that all Defendants were acting with the scope of their employment at the time of the incidents out of which the claims arose. (Doc. 1-2).

summons, the Complaint, and this Memorandum and Order; and (2) send by registered or certified mail to the Attorney General of the United States at Washington, D.C., a copy of the summons, the Complaint, and this Memorandum and Order.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, even though his application to proceed without payment of fees was granted by the state court. See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. See FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

Dated: April 11, 2022

/s *David W. Dugan*

DAVID W. DUGAN
United States District Judge

Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear.  As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.